# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FLOYD MCCLAIN,**

       **Plaintiff,**

**v.**                                                                    Case No: 6:16-cv-1734-Orl-31GJK

**FLORIDA DEPARTMENT OF**
**HIGHWAY SAFETY AND MOTOR**
**VEHICLES and TERRY L. RHODES,**

       **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 32) filed by the Plaintiff, Floyd McClain, and the Motion for Summary Judgment filed by the Defendants (Doc. 36), as well as each side's responses and replies to those motions.

**I.    Background**

McClain, who has been profoundly deaf since shortly after he was born, wants to obtain a commercial driver's license (henceforth, a "CDL"). Anyone wishing to obtain a CDL must pass a medical test, a knowledge test, and a test of driving skills. Until fairly recently, McClain could not have obtained a CDL, because the medical exam includes a hearing test. However, in 2013, the federal agency that oversees commercial motor vehicle safety – the Federal Motor Carrier Safety Administration ("FMCSA") – surveyed the existing literature and concluded that there was no specific scientific data to show that hearing-impaired drivers posed a higher safety risk than other drivers. 78 Fed. Reg. 7479 (Feb. 1, 2013). Based on this conclusion, the FMCSA began offering

exemptions from the CDL hearing test requirement to some individuals with hearing impairments.[1] The first such exemptions were granted in February 2013. McClain received an exemption in March 2015.

Each state administers its own CDL exam, based on questions and protocols developed by the American Association of Motor Vehicle Administrators ("AAMVA"), a nonprofit organization that represents the officials who administer and enforce motor vehicle laws. States may also authorize third parties to administer the skills test. In May 2016, after receiving his hearing-test exemption and passing the CDL medical and knowledge tests, McClain was set to begin truck-driving classes at Orange County Technical College's Mid-Florida Campus (henceforth, "Mid-Florida Tech"). Mid-Florida Tech would train McClain and administer the skills test, which is normally broken down into three parts. The day after McClain enrolled, however, the school notified him that because Florida had not yet developed a model for administering the CDL skills tests to deaf students, he would not be able to take them. Because of this, the state agency that was going to pay his tuition would not do so, and McClain left Mid-Florida Tech.

On October 3, 2016, McClain filed the instant action, alleging that he had been discriminated against on the basis of his disability. He brought suit against the Florida Department of Highway Safety and Motor Vehicles (the "DMV"), which oversees administration of the CDL exams in this state, and its executive director, Terry Rhodes. The Complaint (Doc. 1) contains two counts: one asserting a claim under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and one asserting a claim under the Rehabilitation Act, 29 U.S.C. § 794.

---

[1] Initially, the FMCSA granted 2-year exemptions to 40 individuals, most of whom had private passenger licenses or previously had CDLs but had become unable to pass the hearing test. 78 Fed. Reg. 7479, 7480-82 (Feb. 1, 2013). McClain contends, and the DMV does not dispute, that since 2013 the FMCSA has granted more than 270 such exemptions.

McClain and the Defendants filed their motions for summary judgment on July 19, 2017 and July 28, 2017, respectively.

## II.	Legal Standards

### A.	Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. The ADA and the Rehabilitation Act

Title II of the ADA protects qualified individuals from discrimination on the basis of disability in services, programs, and activities provided by state and local government entities. To prevail on claim under Title II, a plaintiff must prove that (1) he or she is a qualified individual with a disability; (2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Bircoli v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Section 504 of the Rehabilitation Act provides, in pertinent part, that

> no otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794. Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); 29 U.S.C. § 12112(a).

### III. Analysis

McClain's motion and the Defendants' motion are essentially mirror images of one another, and therefore it makes sense to address them in a single order. Similarly, because McClain's ADA

and Rehabilitation Act claims are governed by the same standards, they will be considered together in this order.

### A. Injunctive Relief and Mootness

In both counts, McClain requests an injunction to prevent the Defendants from continuing to prevent deaf persons from taking the CDL exam. (Doc. 1 at 7, 10). The Defendants contend that developments since the filing of this suit have made McClain's requests for injunctive relief moot. (Doc. 36 at 29). According to the affidavit of Tod Browning, the CDL coordinator for the DMV, the department modified its CDL testing protocols in late 2016 so as to be able to administer the skills test to hearing-impaired drivers. (Doc. 32-6 at 6). In January 2017, the DMV notified McClain that he would be permitted to take the test,[2] and in February 2017, the department administered the test to another hearing-impaired driver who had received an exemption, Frankye Crews. (Doc. 32-6 at 6). Finally, Browning testified that since the change has been made, DMV has not denied any hearing-impaired applicants with exemptions the opportunity to test, and has no plans to do so in the future. (Doc. 32-6 at 8). The Defendants contend that this proves that the DMV has changed its policy, and therefore no injunction is needed

McClain argues that this dispute is not moot. He points out that the DMV only made the changes to its CDL testing policy after he filed suit. He also notes that Rule 15A-7.007(4) of the Florida Administrative Code – which provides in pertinent part that applicants who are deaf "will not be issued a commercial driver's license" – has not been repealed or amended. McClain also

---

[2] According to McClain, this communication from the DMV spurred him into enrolling again at Mid-Florida Tech, which he did in March 2017. (Doc. 32-5 at 5). McClain switched to a different truck-driving program in August 2017. (Doc. 40 at 14). So far as the record reflects, McClain remains enrolled in the new truck-driving program but has not yet attempted to take a CDL skills test.

argues that the DMV "has not officially changed its regulations, policies, procedures and training manuals" regarding testing of deaf people. (Doc. 32 at 22).

A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). A case might become moot if subsequent events made it "absolutely clear" that the allegedly wrongful behavior "could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203 (1968). The "heavy burden" of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.* The three factors relevant to a mootness inquiry are (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct. *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005).

Upon review, the Court finds that the Defendants have met their burden as to this point. They have shown that it cannot reasonably be expected that the DMV will again deny hearing-impaired applicants the chance to take a CDL test after they receive an exemption from the hearing test. While the DMV did not alter its policies in this regard until after the filing of this suit, there is no evidence that the suit prompted the change. Jay Levenstein, Chief of the Bureau of Commercial Vehicle and Drivers Services at the DMV, testified in an affidavit that the catalyst for the change was a November 2016 letter to his department from the FMCSA. (Doc. 36-9 at 3). In that letter, the federal agency provided notice (1) that it would not be developing procedures for giving CDL tests to hearing-impaired applicants, and (2) that the DMV was expected to do so.

(Doc. 36-9 at 3). After receipt of that letter, Levenstein testified, the DMV "immediately went to work on developing a test procedure." McClain has not offered any evidence that contradicts Levenstein's testimony.

While McClain is correct that Rule 15A-7.007(4) has not been amended or repealed, that issue is a red herring. Levenstein, who says he is the person responsible for the handling and proposed amendment of Rule 15A-7.007(4), testified that the only reason it has not yet been amended is that the DMV is considering "whether to address a Hazardous Materials Endorsement in its amendment." (Doc. 36-9 at 3). More importantly, he testified that the DMV agrees (and has notified the FMCSA) that the FMCSA exemptions preempt the rule and that his department "has no intention whatsoever to utilize the Rule, now or in the future, to somehow keep exempt applicants from testing for their CDL." (Doc. 36-9 at 4). In addition, he testified that it was his understanding that the Rule had never been cited by the DMV to bar a CDL applicant from testing. Nothing in the record contradicts Levenstein's testimony as to these points. The record reflects that DMV pointed to the absence of a proper testing procedure, rather than the existence of Rule 15A-7.007(4), as the reason hearing-impaired drivers could not take the CDL test.

Accordingly, the Court finds that subsequent events have rendered McClain's request for injunctive relief moot.

**B.     ADA and Rehabilitation Act Claims**

At least for purposes of the instant motions, the Defendants do not dispute McClain's contention that most of the elements of an ADA or Rehabilitation Act claim are satisfied, in that he is an "otherwise qualified individual with a disability" who was excluded from being able to obtain

a commercial driver's license.[3]   However, they raise two arguments that McClain has not established a violation of either the ADA or the Rehabilitation Act.

The Defendants first argue that the exclusion did not occur "by reason of" McClain's disability because there was no discriminatory animus behind the exclusion.   (Doc. 36 at 21). Instead, they argue, the exclusion occurred due to the amount of time needed by the DMV to adapt the existing test procedures to accommodate the hearing-impaired.   However, under either the ADA or the Rehabilitation Act, plaintiffs are not required to show that the decision(s) at issue resulted from discriminatory animus.   *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012).   Thus, absence of animus does not aid the Defendants.

In the alternative, the Defendants contend that granting McClain's initial request to take a CDL test would have required a "fundamental alteration" of the testing program, which the law does not require.   *See, e.g., Tennessee v.* Lane, 541 U.S. 509, 531-32 (2004) ("Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities. . . .   It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided … [or] impose an undue financial or administrative burden.").   However, this argument is at odds with the position taken by the Defendants in regard to McClain's request for injunctive relief – *i.e.*, that no injunction is needed because they have already made all the changes required to allow McClain and others in his position to take the CDL test.   On this record, the Court cannot conclude that accommodating McClain would have required impermissible fundamental alterations to the CDL program.[4]

---

[3] In addition, the Defendants do not dispute that the DMV receives federal funds, so as to bring it within the ambit of the Rehabilitation Act.

[4] This conclusion regarding "fundamental alterations" might have been different if, for example, McClain had originally requested accommodations that the Defendants believed to be unreasonable, leading them to made different accommodations.   The record is silent as to any

**C.      Compensatory Damages**

To recover compensatory damages under either the ADA or the Rehabilitation Act, a plaintiff must prove that he or she suffered intentional discrimination. *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014) (citing cases). However, a plaintiff is not required to prove that the defendant acted out of ill will or animosity toward disabled persons; rather, the plaintiff need only show that when the defendant violated his or her rights under the statute, it did so with discriminatory intent. *Liese*, 701 F.3d at 345-48.  A plaintiff may prove discriminatory intent by showing a defendant was deliberately indifferent to his or her statutory rights. *McCullum* at 1148. "Deliberate indifference" is an exacting standard, requiring a showing of more than gross negligence. *Id.* To establish deliberate indifference, a plaintiff must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood. *Id*.

The Defendants argue that McClain has not shown that he suffered intentional discrimination, and therefore he cannot recover compensatory damages.   Resolution of this argument requires an examination of the situation as it existed before McClain sought to take the CDL test.

The FMCSA implements and enforces the Federal Motor Carrier Safety Regulations (henceforth, the "Regulations"). *See generally* 49 C.F.R. § 350.101 *et. seq.* The Regulations require that each state's CDL examination include a knowledge test and a skills test that cover specific subject areas.  49 C.F.R. § 383.110.  The Regulations also include a long list of medical requirements for drivers, including a number of conditions, such as epilepsy and insulin-dependent diabetes, that would preclude a person from operating a commercial vehicle.  49 C.F.R. § 391.41.

---

specific requests for accommodation by McClain.

As mentioned above, the Regulations also require a hearing test, providing that a person is qualified to drive a motor vehicle if he or she

> [f]irst perceives a forced whispered voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5—1951.

49 C.F.R. 391.41(b)(11).

The Defendants contend (and McClain does not dispute) that when the FMCSA began issuing hearing test exemptions in 2013, the DMV realized that it would likely be called on to administer CDL exams to deaf applicants. The exemptions, however, were limited to the hearing test requirement; they did not exempt recipients from the other requirements of the Regulations. According to the Defendants, some of these other requirements (1) appeared to make it unsafe to administer CDL skills tests to hearing-impaired applicants such as McClain or (2) would have required that that the DMV ignore or violate other Regulations to be able to do so. (Doc. 36 at 6-10).

For instance, McClain communicates primarily via American Sign Language ("ASL"), (Doc. 1 at 2), and the Regulations prohibit the use of interpreters during the administration of the knowledge or skills tests. 49 C.F.R. § 383.133(b)(3) & (c)(5).[5] The Regulations also provide that,

---

[5] McClain argues that the Regulations prohibit only foreign interpreters, and therefore would not cover an ASL interpreter. (Doc. 40 at 4). However, the relevant sections of the Regulations do not exclude ASL interpreters from this prohibition, either explicitly or implicitly. The Regulations governing the knowledge tests provide that they may be administered in any of several formats, including in a foreign language, "provided no interpreter is used in administering the test." 49 C.F.R. § 383.133(b)(3). And the section governing the skills test has an even more definitive prohibition:

> *Interpreters are prohibited during the administration of skills tests.* Applicants must be able to understand and respond to verbal

to be qualified to drive a motor vehicle, a person must be able to "r*ead and speak the English language sufficiently to converse with the general public*, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 C.F.R. § 391.11(b)(2) (emphasis added).

The Regulations also require that states "develop, administer and score the skills test based solely on the information and standards" contained in two manuals produced by the AAMVA. 49 C.F.R. § 383.133(c)(1). The relevant versions of those manuals included, *inter alia*, requirements that an in-cab examiner give direction to and require clarification from the student during the skills test, including during emergency and unsafe conditions. (Doc. 36-2 at 3). Browning – the DMV's CDL coordinator, testified that his department was concerned that doing these things would force a hearing-impaired student to take his or her eyes off the road to so such things as read a message written by the examiner or write a response. (Doc. 36-2 at 5). The DMV was concerned that such actions might create an unsafe situation or be too cumbersome to avert one that was developing. (Doc. 36-2 at 5). The DMV had similar safety concerns about the student's ability to hear such things as sirens, squealing engine belts, or air leaking from tires. (Doc. 36-2 at 4).

According to Browning, the department

> waited [to test] because there were a number of legal questions and
> concerns with safety-related issues, a number of things that were
> listed in the federal regulations that went directly against what testing
> a deaf applicant would do. It went strictly against what the testing
> manual did. And with the language that was out there, it was making
> sure that we were in compliance with what the fed required us to do
> and that we were within all the regulations. And as we were waiting
> for a test model to be presented to us on how to test an applicant, we

---

> commands and instructions in English by a skills test examiner.
> *Neither the applicant nor the examiner may communicate in a
> language other than English during the skills test.*

49 C.F.R. § 383.133(c)(5) (emphasis added).

> continued to have those conversations about the safety concerns and
> the concerns that we – to be able to test an applicant when [sic]
> against some of the federal regulations that [were] in place.

(Doc. 32-1 at 42-43).

Such concerns were not limited to the DMV. In a report to the FMCSA, the AAMVA stated that the organization had safety and liability concerns about testing hearing-impaired individuals, as well as a belief that states lacked the authority to test such individuals under the then-existing Regulations. (Doc. 36-5 at 13).

Browning testified that, beginning in 2013 the department sought guidance from the FMCSA and the AAMVA on numerous occasions as to how to test hearing-impaired applicants safely and without violating the Regulations (such as, for example, the ban on interpreters). In September 2016, the DMV asked the FMCSA whether it might use a simulator to administer the skills test to a deaf driver. (Doc. 36-2 at 6). The FMCSA declined to allow this. (Doc. 36-2 at 6). As noted above, in November 2016, the FMCSA informed the DMV that – although the federal agency had previously provided CDL testing requirements and instructions – it would not be doing so in regard to hearing-impaired students, and the DMV would be required to develop its own testing protocol. (Doc. 36-2 at 6). Shortly thereafter, the DMV did so. (Doc. 36-2 at 6). Browning's affidavit is silent as to the changes that were made in the testing protocol.

The DMV's first qualified applicant for a CDL skills test who had received a hearing test exemption was Frankye Crews. (Doc. 36-2 at 6). Crews passed the medical test and the knowledge test, and then sought to take the skills test in mid-2016. (Doc. 36-2 at 6). After modifying its protocol, the DMV first administered the CDL skills test to Crews in February 2017. McClain was notified on January 5, 2017 that he would be permitted to take the skills test once he felt prepared to do so, and the DMV notified all third party administrators later that month that it would be administering the tests to hearing-impaired applicants. (Doc. 36-2 at 6).

McClain argues that deliberate indifference has been shown here because "a request for accommodations was made, and the response was ***no*** – testing procedures have not been developed." (Doc. 40 at 20) (emphasis in original). Further, McClain asserts, "[w]here there is no *attempt* to accommodate, there is deliberate indifference." (Doc. 40 at 20) (emphasis in original).

Even viewed in the light most favorable to McClain, the facts of record do not support his position. The record shows that, dating back to the initial issuance of the exemptions, the DMV repeatedly sought guidance from the appropriate federal agency as to the changes that would need to be made to offer CDL tests to hearing-impaired applicants safely and in conformity with the existing regulations. Once it learned that the usual source for the testing protocols would not be providing any in regard to this issue, the DMV promptly developed its own set of protocols. The DMV then told McClain he would be allowed to take the exam, used the new protocols to administer the test to Crews, and stated it would continue to allow drivers who had received an exemption to take the CDL test. There is no evidence that the DMV has subsequently refused to let a hearing-impaired driver take the CDL test or otherwise backtracked on its promise. Given these efforts, and the fact that no hearing-impaired driver had even sought to take the CDL test before McClain started taking classes at Mid-Florida Tech in May 2016, no reasonable jury could conclude that the DMV was deliberately indifferent here. The Court finds that McClain cannot recover compensatory damages in this case.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment filed by Floyd McClain (Doc. 32) is **DENIED**. And it is further

**ORDERED** that the Motion for Summary Judgment filed by the Defendants (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**. McClain's request for injunctive relief is

**DENIED AS MOOT,** and McClain cannot recover compensatory damages.   In all other respects, the motion is **DENIED.**

In light of this order, counsel for the Plaintiff is **DIRECTED** to advise the Court by written response on or before October 23, 2017 as to any issues remaining to be determined at trial. Counsel for the Defendants may file a response on or before October 27, 2017.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 10, 2017.


Copies furnished to:

Counsel of Record
Unrepresented Party